THOMPSON, Presiding Judge.
Samuel Mills, Jr., appeals from a judgment of the Mobile Circuit Court (“the trial court”) denying him unemployment-compensation benefits.
Most of the facts in this case are undisputed. The record indicates that Mills, who was 72 years old at the time of the trial, worked for five years as a truck driver for Baldwin Transfer Company, Inc. (“Baldwin”). In 2010, Mills developed an ear infection. Mills does not suggest that the infection was caused or aggravated by his job, but the infection did cause him to suffer dizziness and vertigo. As a result, for two periods in 2010, Mills was absent from work at Baldwin pursuant to the federal Family Medical Leave Act (“FMLA”).
Before a driver for Baldwin can return to work after a medical leave of absence, Baldwin requires him or her to undergo a physical examination that complies with the requirements of the United States Department of Transportation (“DOT”). The physicians at Northside Industrial (“the clinic”) are certified to perform DOT physicals, and Baldwin retains the clinic to determine whether its drivers are cleared to return to work.
On January 19, 2011, Dr. Jason Valentine, a physician at the clinic, examined Mills on behalf of Baldwin and determined that Mills was not physically fit to return to work as a driver. Specifically, Dr. Valentine restricted Mills from driving any commercial vehicle or from climbing for one year, at which time, Mills could be reevaluated. Because of the restrictions imposed by Dr. Valentine, Mills was unable to continue working as a truck driver. Baldwin did not have any other type of work for Mills to do.
On February 10, 2011, Mills visited Dr. Daniel Polansky, who determined that Mills was physically able to return to work. Because Dr. Polansky was not DOT certified, Baldwin would not accept the release. Baldwin told Mills that, to be able to return to work before the yearlong restriction on his driving ended, he could be reexamined by a physician at the clinic, but he would have to do so at his own expense. Mills would not pay the $45 reexamination fee, and instead he decided to comply with Dr. Valentine’s driving restriction.
On February 20, 2011, Mills filed a claim for unemployment-compensation benefits with the Alabama Department of Industrial Relations, now known as the Alabama Department of Labor (“the department”).[1] In completing the paperwork required for *436 the claim, Mills indicated that he was not able to work and that he was not available to accept full-time work because of other obligations. Additionally, he did not contact the department within four days of filing his claim to provide additional information, as the department had instructed. The department denied Mills’s request for benefits, determining that, because he was not able to perform work for which he was qualified based on past training or experience, he was not eligible to receive unemployment-compensation benefits pursuant to § 25-4-77(a)(S), Ala.Code 1975.
Mills appealed the determination to the department’s Board of Appeals (“the board”). The department scheduled a hearing on the issues whether Mills was able and available to work and whether he had left Baldwin voluntarily without good cause connected to his job. After a hearing conducted by telephone, the hearing officer for the board issued a decision in which she determined that Mills had voluntarily quit his job “when he failed to return to work and get a physical required by the employer from the company doctor.” The hearing officer stated that Mills’s reason for leaving work was “of a personal nature and no- work reason was established.” Therefore, the hearing officer concluded, Mills was disqualified from receiving unemployment-compensation benefits, pursuant to § 25-4-78(2), Ala.Code 1975.
In her decision, the hearing officer pointed out that a claimant is not eligible to receive benefits if, among other things, he or she is “physically and mentally unable to perform work of a character which she is qualified to perform by past experience or training.” The hearing officer found that Mills had called the department’s “inquiry line” on February 28, 2011, and provided information indicating that he had become able to work as of February 14, 2011. Therefore, the hearing officer concluded, Mills met the department’s eligibility requirements as of February 14, 2011. However, the decision continued, his disqualification for benefits would remain in effect until he obtained a job and then subsequently met the statutory qualifications to be eligible to receive unemployment compensation.
Mills appealed the hearing officer’s decision to the trial court for a trial de novo. A trial was held on April 17, 2012. In addition to the facts set forth above, the evidence indicated that, at the end of the one-year restriction period imposed by Dr. Valentine, Mills did not return to Baldwin to make himself available for work. Mills testified that, at the time of the trial, he was looking for work. He also said that, since the yearlong restriction had ended, he had been seeking a job in which he could drive a truck locally.
After the trial, the trial court entered a judgment denying Mills’s claim for unemployment-compensation benefits. In explaining its decision, the trial court wrote:
“Here, [Mills] failed to return to Baldwin and offer himself back for work at the expiration of the one (1) year restriction and as such, the Court finds that [Mills] voluntarily quit his job without good cause connected with work and is therefore disqualified from receiving unemployment benefits pursuant to Code of Alabama § 25-4-78(2).”
Mills appealed to this court from the trial court’s judgment.
On appeal, Mills asserts that the trial court erred in denying him unemployment-compensation benefits for the period beginning on February 20, 2011, when he first applied for benefits, and ending on January 19, 2012, when his one-year driving restriction ended and he admittedly failed to return to Baldwin.
*437 “The trial court’s findings of fact in an unemployment compensation case are presumed correct, and its judgment based on such findings will not be reversed unless the findings are clearly contrary to the great weight of the evidence. Department of Industrial Relations v. Pickett, 448 So.2d 364 (Ala.Civ.App.1983). The Unemployment Compensation Act is ‘insurance for the unemployed worker and is intended to be a remedial measure for his benefit.’ Department of Industrial Relations v. Jaco, 337 So.2d 374, 376 (Ala.Civ.App.1976). ‘It should be liberally construed in [the] claimant’s favor and the disqualifications from benefits should be narrowly construed.’ Department of Industrial Relations v. Smith, 360 So.2d 726, 727 (Ala.Civ.App.), cert. den., 360 So.2d 728 (Ala.1978).”
State Dep’t of Indus. Relations v. Bryant, 697 So.2d 469, 470 (Ala.Civ.App.1997). “Whether an employee leaves his employment voluntarily without good cause is a question of fact. Lagrone v. Department of Indus. Relations, 519 So.2d 1345, 1347 (Ala.CivApp.1987).” Director, Dep’t of Indus. Relations v. Ford, 700 So.2d 1388, 1390 (Ala.Civ.App.1997).
The statute relied upon by the trial court in this case is § 25-4-78(2), which provides, in pertinent part:
“An individual shall be disqualified for total or partial unemployment:
[[Image here]]
“(2) Voluntarily quitting work. If he has left his most recent bona fide work voluntarily without good cause connected with such work.
“a.l. However, he shall not be disqualified if he was forced to leave work because he was sick or disabled, notified his employer of the fact as soon as it was reasonably practicable so to do, and returned to that employer and offered himself for work as soon as he was again able to work; provided, however, this exception shall not apply if the employer had an established leave-of-absence policy covering sickness or disability and:
“(i) The individual fails to comply with same as soon as it is reasonably practicable so to do; or
“(ii) Upon the expiration of a leave of absence shall fail to return to said employer and offer himself for work, if he shall then be able to work, or if he is not then able to work, he fails to so notify his employer of that fact and request an extension of his said leave of absence as soon as it is reasonably practicable so to do.”
For the reasons discussed below, we agree with Mills that the trial court’s finding that he failed to return to Baldwin and offer himself for employment cannot serve as the basis for denying him benefits for the year beginning on January 19, 2011, when Dr. Valentine restricted Mills from working as a commercial truck driver. We note that, on appeal, Mills concedes that, because he did not return to Baldwin at the end of his restriction period, he is not entitled to receive unemployment-compensation benefits from January 2012 forward.
To review the propriety of the trial court’s determination, we must construe the meaning of § 25-4-78(2)a.l.(ii).
“ ‘ “The intent of the Legislature is the polestar of statutory construction.” Siegelman v. Alabama Ass’n of Sch. Bds., 819 So.2d 568, 579 (Ala.2001) (citing Richardson v. PSB Armor, Inc., 682 So.2d 438, 440 (Ala.1996); Jones v. Conradi, 673 So.2d 389, 394 (Ala.1995); and Ex parte Jordan, 592 So.2d 579, 581 (Ala.1992)). We are mindful that “the Legislature will not be presumed to have done a *438 futile thing in enacting a statute; there is a presumption that the Legislature intended a just and reasonable construction and did not enact a statute that has no practical meaning.” Weathers v. City of Oxford, 895 So.2d 305, 309 (Ala.Civ.App.2004) (citing Ex parte Watley, 708 So.2d 890 (Ala.1997), and Ex parte Meeks, 682 So.2d 423 (Ala.1996)).’
“Glass v. Anniston City Bd. of Educ., 957 So.2d 1143, 1147 (Ala.Civ.App.2006). Additionally, ‘ “[a] literal interpretation will not be adopted, when it would defeat the purposes of a statute, if any other reasonable construction can be given to the words.” ’ Limestone County Water & Sewer Auth. v. City of Athens, 896 So.2d 531, 537 (Ala.Civ.App.2004) (quoting Harrington v. State, 200 Ala. 480, 482, 76 So. 422, 424 (1917)). ‘[T]he law is a reasonable master, and it should be so construed in the light of common sense in ascertaining the legislative intent.’ Stith Coal Co. v. Sanford, 192 Ala. 601, 606-07, 68 So. 990, 992 (1915).”
T.G. v. Houston Cnty. Dep’t of Human Res., 39 So.3d 1146, 1149-50 (Ala.Civ.App.2009).
The trial court determined that Mills was disqualified from receiving benefits beginning in January 2011 because, a year after he applied and was denied those benefits, he failed to return to work at Baldwin. In other words, the trial court’s interpretation of § 25-4-78(2)a.l.(ii) deprives Mills of obtaining benefits during the period that, pursuant to Baldwin’s policy, Mills was not able to drive commercially. However, Mills’s failure to return to work at the end of that period cannot possibly be the basis for the denial of benefits as early as February 20, 2011.
As mentioned, the legislature’s intent in enacting the Unemployment Compensation Act (“the Act”), § 25-4-1 et seq., Ala.Code 1975, was to provide “ ‘insurance for the unemployed worker and is intended to be a remedial measure for his benefit.’ ” Bryant, 697 So.2d at 470 (quoting Dep’t of Indus. Relations v. Jaco, 337 So.2d 374, 376 (Ala.Civ.App.1976)). Furthermore, disqualifications from benefits must be narrowly construed. Id. A claimant certainly is not required to wait until he or she once again has the ability to work before he or she can apply for benefits for payments aimed at assisting the claimant during the period he or she cannot work. We conclude that the provision at issue does not become operative until a leave period has ended and the claimant then fails to return to work. During the time a claimant is not able to work, § 25-4-78(2)a.l.(ii) has no application. To interpret the statute in the manner the trial court has interpreted it would deprive a claimant of unemployment-compensation benefits at the time those benefits are most needed. Such a result defeats the purpose of the Act. Accordingly, we conclude that the trial court erred in denying Mills unemployment-compensation benefits from February 2011 until the end of the year during which Dr. Valentine restricted him from driving on the ground that Mills failed to return to Baldwin to offer himself for employment in January 2012.
Our inquiry does not end there, however. This court “ ‘must affirm the judgment of the trial court if that judgment is supported by any valid legal ground, even if that ground was not argued before the trial court or this Court.’ ” Patterson v. Liberty Nat’l Life Ins. Co., 903 So.2d 769, 780 (Ala.2004) (quoting Ex parte CTB, Inc., 782 So.2d 188,191 (Ala.2000)).
Section 25-4-77 of the Act establishes the requirements a claimant must meet to be eligible to receive benefits. Assuming a claimant meets those requirements, he or she still might be disqualified from receiving benefits because of certain reasons *439 enumerated in § 25-4-78. In determining that Mills had voluntarily left his employment without good cause connected to his work, the trial court applied the second step in the process of determining whether Mills was disqualified from receiving unemployment-compensation benefits. The threshold question, however, is whether Mills was eligible to receive benefits in the first place.
On appeal, the department argues that Mills did not seek employment during the year he was restricted from driving; therefore, it says, he was not eligible to receive unemployment compensation. In support of its assertion, the department points out that, to be eligible for unemployment-compensation benefits, a claimant must be physically and mentally able and available to perform work of a character he or she is qualified to perform by past experience or training, and he or she is required to make a reasonable effort to obtain such work during the period for which unemployment-compensation benefits are sought. § 25-4-77(a)(8) and (5), Ala.Code 1975.
Mills presented evidence indicating that, on February 10, 2011, his physician, Dr. Polansky, determined that he was physically able to return to work. In his brief, Mills conceded that, other than being restricted from being a commercial truck driver, he was not medically restricted from performing any other job. Therefore, Mills met the requirement that he be physically and mentally able to work. § 25-4-77(a)(3).
However, a further eligibility requirement is that the claimant make a “reasonable and active effort to secure work which he is qualified to perform by past experience and training.” § 25-4-77(a)(5). “It is not necessary that a claimant seek employment solely in the same industry as her former employment. Heatherly v. Campbell, 485 So.2d 735 (Ala.Civ.App.1986).” Canady v. Allen, 646 So.2d 147, 149 (Ala.Civ.App.1994). A claimant must present evidence that shows he or she made good-faith and reasonable efforts to secure employment. State Dep’t of Indus. Relations v. Singleton, 364 So.2d 325, 326-27 (Ala.Civ.App.1978). In this case, there is no evidence in the record indicating that Mills sought employment of any kind during the time for which he seeks unemployment-compensation benefits. Mills thus failed to meet his burden of demonstrating that he made a good-faith and reasonable effort to secure employment. Accordingly, Mills was not eligible to receive unemployment-compensation benefits, and the trial court’s determination that Mills was not entitled to receive benefits was correct, albeit for a reason not stated in the judgment. The trial court’s judgment denying Mills’s claim for unemployment-compensation benefits is therefore affirmed.
AFFIRMED.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. On October 1, 2012, the Alabama Department of Industrial Relations, which administered the state's unemployment-compensation system, merged with the Alabama Department of Labor; the consolidated department is now known as the Alabama Department of Labor. See § 25-2-1.1, Ala.Code 1975.